IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| TRANQUILINO ANDREW YARA, | § | |
| TRANQUILINO NICK YARA, and | § | |
| SANDRA YARA, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | No. 2-12-CV-117-J |
| | § | |
| PERRYTON INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs allege that Andrew Yara was injured on May 19, 2010 when his cousin and two other students made him carry them to class as part of his high school assignment on persecution. Plaintiffs claim that, through the assignment, Perryton Independent School District (PISD) violated Andrew's constitutional rights to bodily integrity and to be free from excessive force and is therefore liable under 42 U.S.C. § 1983. Defendant argues in its *Motion for Summary Judgment* that Plaintiffs' § 1983 claim fails for two reasons: first, Plaintiffs' allegations do not give rise to a § 1983 claim; second, even if Plaintiffs did state a § 1983 claim, PISD cannot be liable because no district policy led to Andrew's injury. Because Plaintiffs fail to offer summary judgment evidence that PISD policy led to the purported constitutional violations, Defendant's motion is GRANTED.

### BACKGROUND

The relevant facts, as described by Plaintiffs, are as follows. Andrew was injured while participating in "Red Ribbon Day," a Nazi-Jew simulation at Perryton High School in which Mr. Francis, one of the school's World History teachers, graded his sophomore students. Perryton High's Principal Herbert approved this "enrichment activity," as he normally did with lesson

plans.  Mr. Francis conducted the annual two-day activity by assigning half of his students to wear a red ribbon on the first day and the rest to wear a red ribbon the second day.   While wearing a red ribbon, students were expected to "realize what it feels like to be persecuted" by being shunned and by complying with requests and orders of school employees and other students.  Those not wearing ribbons, including school employees, were expected to ignore and "persecute" red ribbon students.  Some examples of alleged persecution include making red ribbon students kneel facing walls; stand to be sprayed with a water hose by a vice principal; carry others' books and backpacks to class; wait until last to eat lunch; crawl down the hall; use only marked restrooms and drinking fountains; etc.

On May 18–19, 2010, Mr. Francis conducted his third annual (and final) Red Ribbon Day after sending an email to staff members asking them to participate but not to allow physical harm to red ribbon students.   He told his class that red ribbon students should do whatever anyone asked of them.  During the second day, Andrew wore a red ribbon.  After lunch, a staff member, Mr. Moreno, stopped Andrew and told him and other red ribbon students to kneel in the hall, facing the wall, with their hands behind them.   Then "EE," a senior and Andrew's heavier cousin, asked Mr. Moreno if he could "borrow that Jew—I mean red ribbon."  Mr. Moreno assented.  EE then allegedly told Andrew, within a few feet of an indifferent Mr. Moreno, to carry him to class. Andrew, confirming that EE was not joking, began carrying EE when another senior jumped onto EE's back, causing all three to fall.  When Andrew got up, EE jumped onto his back again, shooting pain through Andrew's lower back and legs.  The pain briefly subsided and Andrew carried EE, then two more students, to their classes.

Andrew's pain then returned.  His injury became associated over time with seizures, depression, lowered academic performance, limited physical activity, and impaired gait and

attendant teasing, in addition to costly physical examinations, therapy sessions, and treatments. Although Mr. Francis initially ignored Andrew's complaint that he had been injured during Red Ribbon Day, Mr. Francis and Principal Herbert decided to end the enrichment activity before holding it a fourth time.

Andrew and his parents brought this § 1983 action alleging that PISD violated his Fourth Amendment right to be free from excessive force and his Fourteenth Amendment substantive due process right to bodily integrity.

## LEGAL STANDARD

Under Fed. R. Civ. P. 56(c), a court may render summary judgment where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (initial burden is on movant to show entitlement to summary judgment with competent evidence). A material fact issue is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The substantive law governing the case will identify which facts are material. *Id.* at 249. The party opposing judgment must show "specific facts with sufficient particularity to meet all the elements necessary to lay a foundation for recovery . . . ." *Brown v. Texas A&M University*, 804 F.2d 327, 333 (5th Cir. 1986).

"Summary judgment disposition is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions." *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987). The Court may not weigh evidence and must resolve "all factual uncertainties and mak[e] all reasonable inferences in favor of the nonmoving party." *Id.* If a rational trier of fact, based upon the record as a whole, could not find for the non-moving party,

there is no genuine issue for trial. *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992).

"Finally, where the non-moving party has presented evidence to support the essential elements of its claims but that evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). Legal conclusions and general allegations do not satisfy this burden. *Id.* at 250; *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (ultimate or conclusory facts are insufficient to support or defeat motion for summary judgment).

<u>**DISCUSSION**</u>

Section 1983 provides remedies against people who, acting under color of state law, violate a plaintiff's federal rights. School districts (like municipalities) are considered "people" under § 1983, but only official district policy can lead to liability for constitutional torts. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003); *see also Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978).

Plaintiffs claim that Principal Herbert, acting as final district policymaker, approved Red Ribbon Day, which therefore became PISD policy or policy-by-custom. Defendant argues that even if Plaintiffs could show that a state actor violated Andrew's constitutional rights, no district policy was behind Andrew's injury.

Plaintiffs also claim that the district is liable even if the board is the sole district policymaker, because the board failed to train or supervise its employees to either forgo such ill-advised activities as Red Ribbon day or to prevent Andrew's injury during the assignment.

As the following analysis shows, PISD is not liable for Andrew's injury, so Defendant's *Motion for Summary Judgment* must be granted.

### District Policy or Custom

Because school districts are not subject to liability for the actions of their employees who have no policymaking authority, *Rivera*, 349 F.3d at 247, a claim of district liability under § 1983 "requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Doe ex rel. Magee v. Covington County Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866 (5th Cir. 2012) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). A plaintiff must also show that the policymaker was deliberately indifferent to the known or obvious fact that the policy would bring the kind of constitutional violation complained of. *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)).

### *Final District Policymaker*

"Policymaker" refers to someone with final policymaking authority for the district as a matter of state law. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989), *remanded to* 7 F.3d 1241 (5th Cir. 1993). Plaintiffs, citing Tex. Educ. Code § 11.202(a) ("The principal of a school is the instructional leader of the school . . . ."), argue that the board delegated to Principal Herbert final policymaking authority for "curriculum implementation" because he had power to approve lesson plans and classroom activities at Perryton High. Power to make decisions, however, is not power to make policy, and "Texas law is clear that final policymaking authority in an independent school district . . . rests with the district's board of trustees." *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d at 1245; *see also* Tex. Educ. Code § 11.151–1512; *Bates v. Dallas Indep. Sch. Dist.*, 952 S.W.2d 543, 549 (Tex. App.—Dallas 1997, writ denied) ("the school board of trustees has final policymaking authority for a school district").

Even an explicit directive in the Texas Education Code for principals to "develop, review, and revise the campus improvement plan" is mere decision-making authority. *Rivera*, 349 F.3d at 248 (citing Tex. Educ. Code § 11.253(c)). Likewise, school boards do not delegate policymaking authority when they give "complete discretion" to principals or superintendents over a particular area. *See, e.g., Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 217 (5th Cir. 1998) (citing *Spann v. Tyler Indep. Sch. Dist.*, 876 F.2d 437, 438 (5th Cir 1989)); *Jett*, 7 F.3d at 1245–46 ("that [the superintendent] may have been delegated the final decision [over] protested individual employee transfers does not mean that he had or had been delegated the status of policymaker, much less final policymaker").

Plaintiffs "cite no official document or edict where the Board delegated any of its policymaking authority to [Herbert], or any other principal." *Id.* On the contrary, the board gives decisional authority to "professional staff . . . to select instructional resources for their use in accordance with this policy and the state-mandated curriculum, [but] *the ultimate authority for determining and approving the curriculum and instructional program of the District lies with the Board.*" PISD Policy EFA at 1 (issued July 1, 2002) (emphasis added).

"[A] federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988). Thus, the Court will not conclude that teachers' lesson plans or proposed enrichment activities become final district policy when not vetoed by a principal. Just as a superintendent's decisional authority to approve or disapprove administrative appeals is not policymaking authority, *Jett*, 7 F.3d at 1246 & n.9, neither is a principal's decisional authority to approve or disapprove teachers' lesson plans. *See Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) ("even in those areas [of delegated decision-

making,] the principal must follow the guidelines and policies established by the school district.").

The "one and only" policymaker for PISD is the board of trustees, *Rivera*, 349 F.3d at 248, and as demonstrated below, Plaintiffs fail to show that a policy of deliberate indifference adopted by the board was a moving force behind Andrew's injury.

### Official Policy

A "policy" for purposes of § 1983 liability can be (1) an official statement or decision adopted by the board; or (2) a "persistent, widespread practice of [district] officials or employees" that is "so common and well settled as to constitute a custom that fairly represents [district] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [district] or to an official to whom that body had delegated policy-making authority." *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *see also Rivera*, 349 F.3d 249–50. Plaintiffs contend that Red Ribbon Day is the offending policy. No evidence shows that the board took official action regarding Red Ribbon Day, so Plaintiffs say that it was a "custom of the school." They offer no facts, however, showing that the board knew about Red Ribbon Day at all, much less that this enrichment activity had become district policy by custom. Further, Red Ribbon Day was assigned for just two days a year for two prior years by a single teacher at a single school—it was not a persistent, widespread practice. Plaintiff has failed to show that Red Ribbon Day was PISD policy.

### Deliberate Indifference

Even if Red Ribbon Day were district policy, there is no indication that the "policy . . . [was] adopted "with deliberate indifference to the known or obvious fact that such constitutional violations would result." *James*, 577 F.3d at 617 (quoting *Johnson*, 379 F.3d at

309); *see also Magee*, 675 F.3d at 866, n.11.  The Plaintiffs claim that the school board was deliberately indifferent to the known or obvious fact that excessive force or invasion of bodily integrity violations would result from Red Ribbon Day.  As there is no evidence that the board even knew of Red Ribbon Day—and Plaintiffs recognize that Mr. Francis sent an email to staff not to allow red ribbon students to be physically harmed—Plaintiffs cannot show the "utter lack of regard" that is the hallmark of deliberate indifference.  *See Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 531–32 (5th Cir. 1994) (holding that school district, even if grossly negligent in light of its alleged knowledge of danger, was not deliberately indifferent to killed student's constitutional rights because school officials provided two unarmed guards at dance).

The deliberate indifference standard generally requires that a plaintiff "'demonstrate at least a pattern of similar violations.'"[1]  *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 427 (5th Cir. 2006) (quoting *Johnson*, 379 F.3d at 309).  Plaintiffs present no evidence that constitutional violations occurred during the first two years of Red Ribbon Day, let alone that the board knew of a pattern of violations or of any dangerous enrichment activity whatsoever.  *Cf. Foster v. McLeod Indep. Sch. Dist.*, No. 5:08-CV-71, 2009 WL 175154 (E.D. Tex. Jan. 23, 2009) (holding school district not deliberately indifferent to rights of student raped by teacher even though district had previous, ultimately unsubstantiated report that teacher had kissed a student).  "Here there is *no* allegation of *any* prior incident . . . , much less that any such ever resulted in any injury to another person.  Nor is any other *fact* alleged which would tend to indicate that [the PISD board] had the deliberate indifference necessary for supervisory liability." *Rios*, 444 F.3d at 427 (emphasis in original).

---

[1] Plaintiffs, alleging indifference over several years, do not contend that this case falls into the single-incident exception to showing a pattern of previous injuries.  *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (quoting *Davis v. City of N. Richland Hills*, 406 F.3d 375, 386 (5th Cir. 2005)). If they did, they could not prove the elements of that exception.

Plaintiffs have failed to offer summary judgment evidence that the policymaker was deliberately indifferent to a risk of harm.

### Failure to Train and Failure to Supervise

To establish a claim under § 1983 for failure to train or supervise, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Davis v. City of N. Richland Hills,* 406 F.3d 375, 381 (5th Cir. 2005).

As to deliberate indifference, Plaintiffs contend that the board did not supervise how teachers, overseen by Principal Herbert alone, implemented the required curriculum and did not require implementation training of teachers or principals. Thus, Plaintiffs say, the board's "intentional utter lack of involvement and willful blindness over a period of several years" to a need to train and supervise employees in curriculum implementation led to foreseeable constitutional torts. Yet Plaintiffs offer no facts showing that the board was deliberately indifferent to predictable constitutional violations that would result from the alleged lack of training or supervision.

### *Deliberate Indifference by Failing to Train*

Deliberate indifference to a training need means "'actual or constructive notice' 'that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights' and the actor nevertheless 'choose[s] to retain that program.'" *Porter v. Epps,* 659 F.3d 440, 447 (5th Cir. 2011) (quoting *Connick v. Thompson,* 131 S. Ct. 1350, 1360, (2011)). "Plaintiffs [must] 'show that the failure to train reflects a 'deliberate' or 'conscious' choice to endanger constitutional rights.'" *Estate of Davis,* 406 F.3d at 383 (quoting *Snyder v.*

*Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)).  Plaintiffs do not dispute that Mr. Francis received curriculum-related, district-paid training and that district policy DMD ("Professional Development") supported teacher training.  More importantly, they have not shown that the board knew of Red Ribbon Day or any ill-conceived lesson that could lead to predictable violations of federal rights.

Further, "notice of a pattern of *similar* violations is required."[2]  *Id.* (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 294 (5th Cir. 2005)) (emphasis in original).  No pattern, similar or otherwise, has been shown here.  There is no evidence of injuries in the first two years of Red Ribbon Day or in any other allegedly faulty curriculum implementation within the district. Assuming arguendo that there was such a pattern, Plaintiffs have failed to show that the board knew of it.

Plaintiffs do not show that the board knew of inappropriate curriculum implementation at all, so it could not have known that more training was required to prevent Andrew's injury. Plaintiffs raise no issue of material fact on their failure to train theory.

## Deliberate Indifference by Failing to Supervise

Likewise, "to establish supervisor liability for 'constitutional violations committed by subordinate employees,' plaintiffs must show that the supervisor 'act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates.'"  *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009) (quoting *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 254 (5th Cir. 2005)) (emphasis in original).  For the board to have been deliberately indifferent, it must have been aware of facts inferring that a substantial risk of serious harm existed from their allegedly deficient supervision of curriculum

---

[2] As mentioned in note 1, Plaintiffs do not argue that this case fits the single-incident exception and could not prove its elements if they did.  *See Estate of Davis*, 406 F.3d at 383.

implementation—and it must have actually drawn that inference.  *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"The test for deliberate indifference is subjective, rather than objective, in nature because an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned . . . ." *Wernecke*, 591 F.3d at 401 (quoting *Atteberry*, 430 F.3d at 255) (internal quotation marks omitted).  Without knowing of Red Ribbon Day (or a pattern of other dangerous lesson plans), the board could not have shown deliberate indifference to subordinates' violation of others' constitutional rights. Plaintiffs have raised no issue of material fact on their failure to supervise theory.

## CONCLUSION

Plaintiffs fail to offer summary judgment evidence that could lead to PISD's liability for Plaintiff Andrew Yara's injury.  Red Ribbon Day was not, by fiat or by custom, district policy. Further, Plaintiffs offer no evidence to support their contention that the school board was deliberately indifferent to known or obvious constitutional violations.  Defendant's *Motion for Summary Judgment* is GRANTED. Judgment is entered for Defendant.   All motions not addressed herein are denied as moot.

It is SO ORDERED.

Signed this the _____ day of April, 2013.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE